**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

| | |
|---|---|
| PUBLIC BROADCASTING SERVICE, a District of Columbia non-profit corporation; and WGBH EDUCATIONAL FOUNDATION, a Massachusetts charitable non-profit corporation,<br><br>          Plaintiffs,<br><br>     v.<br><br>CABLE BAHAMAS LIMITED, a Bahamas limited company; and DOES 1 through 10,<br><br>          Defendants. | **Civil Action No.**<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Public Broadcasting Service ("PBS") and WGBH Educational Foundation ("GBH"), by and through their attorneys, bring this Complaint for copyright infringement and other claims against defendants Cable Bahamas Limited ("Cable Bahamas") and Does 1 through 10 (collectively, "Doe Defendants") (Cable Bahamas and Doe Defendants, collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      This action arises from a deliberate, years-long, sustained piracy scheme in which Defendant Cable Bahamas captured U.S. broadcast signals in Florida, converted and encoded Plaintiffs' copyright protected PBS and PBS Kids programs ("PBS Programs," "PBS Kids Programs," and, collectively, "PBS Programming"), and retransmitted that programming to the Commonwealth of The Bahamas ("The Bahamas") for commercial gain—without any license, authorization, or payment.

-- 1 --

2.      Acting directly and through its agents and co-conspirators, including Gulfcom Inc. ("Gulfcom") and the Doe Defendants, Cable Bahamas illegally reproduced, distributed, publicly displayed, and publicly performed thousands of programs—including PBS and PBS Kids Programs—that were broadcast by WPBT, a PBS member station located in Miami, Florida. WPBT distributes PBS Programming, including by over-the-air transmitters and other facilities in Andover, Florida.

3.      Cable Bahamas incorporated PBS Programming into its channel lineups.  Cable Bahamas then used PBS's registered PBS and PBS Kids trademarks to market those infringing channels to customers and sold subscriptions that included Plaintiffs' PBS Programming as part of Cable Bahamas' core content offering.

4.      Plaintiffs are the owners or exclusive licensees of all relevant rights to PBS Programming.  GBH licenses or sublicenses its programming to PBS, who retains the exclusive licenses to retransmit, distribute, and sell PBS Programming.  PBS, in turn, grants non-exclusive licenses or sublicenses in the PBS Programming—including programing owned by PBS, and programming owned by GBH and third parties and exclusively licensed to PBS—to PBS member stations in the United States, including WPBT.  PBS has assigned to GBH the rights in a subset of the infringed PBS Programming, together with all accrued claims for infringement of that programming, including the right to sue and recover damages.

5.      Plaintiffs do not authorize retransmission of PBS Programming outside the United States absent a paid license.  Plaintiffs have not granted Cable Bahamas, Gulfcom, or any Doe Defendant a license or other authorization to retransmit, distribute, or sell PBS Programming.  And yet, everything aired on WPBT—including PBS Programming—was distributed on a 24/7 basis on purported "PBS" channels created by Cable Bahamas on its cable system in The Bahamas.

6.      Cable Bahamas is a sophisticated pay-television operator that routinely negotiates and pays for licenses for third-party programming.  It understands that television programming cannot be lawfully reproduced, distributed, publicly displayed, and publicly performed without authorization.  Nevertheless, Cable Bahamas chose to illegally capture and retransmit PBS

Programming without securing a license or compensating Plaintiffs, while holding itself out to customers and regulators as lawfully offering PBS and PBS Kids Programs on PBS-branded channels.

7.  Cable Bahamas' conduct was not isolated or accidental—it was willful.  It persisted for years and occurred at commercial scale.  And even after Cable Bahamas received notice of Plaintiffs' rights, repeated warnings of the unlawful nature of its conduct, and explicit demands that the infringing conduct cease, Cable Bahamas did not stop.  Instead, Cable Bahamas continued to retransmit, distribute, and sell Plaintiffs' PBS Programming, reflecting a calculated business decision from which it derived significant financial and operational advantages.

8.  Through its unlawful conduct, Cable Bahamas willfully infringed Plaintiffs' rights under the Copyright Act, misused PBS's registered trademarks in violation of the Lanham Act, and inflicted significant commercial and reputational harm by undermining Plaintiffs' ability to license and control their programming in foreign markets.

9.  Plaintiffs bring this action to hold Cable Bahamas accountable for its willful infringements of their copyrights and misuses of PBS's trademarks, and to recover the damages, profits, and injunctive relief to which they are entitled under the law.

## **PARTIES**

10.  Plaintiff Public Broadcasting Service is a District of Columbia non-profit membership corporation, with its principal place of business in Arlington, Virginia.  PBS provides services and distributes content to U.S. public television stations, 97% of which are PBS member stations, and owns and/or holds exclusive license rights in and to much of the educational, cultural, news, and artistic programming distributed through that system, including exclusive rights in PBS Programming.

11.  Plaintiff WGBH Educational Foundation is a Massachusetts charitable non-profit corporation, with its principal place of business in Boston, Massachusetts.  GBH owns copyrights in certain television programming.  In addition, PBS assigned to GBH exclusive distribution rights

and all accrued infringement claims with respect to a subset of PBS Programming at issue in this action.

12.    Defendant Cable Bahamas Limited is a foreign company organized and existing under the laws of the The Bahamas, with its registered office in Nassau, The Bahamas.  Cable Bahamas owns and operates Caribbean Crossings Ltd. ("Caribbean Crossings"), which operates a submarine fiber-optic network connecting The Bahamas to the United States.[1]  Cable Bahamas, directly or through its ownership and control of Caribbean Crossings, operates a submarine cable landing station in Boca Raton, Florida, pursuant to U.S. government licenses, including licenses issued by the Federal Communications Commission.  Caribbean Crossings is a foreign corporation licensed to transact business in Florida.

13.    Defendants Does 1 through 10, whose identities are presently unknown, are individuals or entities who are agents of Cable Bahamas or its agent Gulfcom, or acted in concert with, conspired with, and/or knowingly aided and abetted Cable Bahamas and Gulfcom in infringing PBS Programming.

14.    Nonparty Gulfcom Inc. ("Gulfcom") is a foreign company organized and existing under the laws of Barbados, with its registered office in St. Michael, Barbados.  Gulfcom is registered with the State of Florida as a foreign corporation licensed to transact business in the state and maintains an office in and conducts business from Clermont, Florida.  Gulfcom also operates telecommunication facilities in Ontario, Canada, including a satellite uplink facility from which it has asserted that it transmits television programming to Cable Bahamas.  Gulfcom was previously sued for copyright infringement arising from its alleged unauthorized retransmission of broadcast signals by Miami stations WPLG (a former ABC affiliate) and WFOR (a CBS affiliate). *Columbia Pictures Industries, Inc. v. Canadian Satellite Communications, Inc.*, No. 1:01-cv-04218-JLK (United States District Court, Southern District of Florida).  Gulfcom has represented

---

[1] Cable Bahamas Ltd., *Consolidated Financial Statements For The Year Ended June 30, 2025 And Independent Auditors' Report* 15 (Oct. 6, 2025), https://www.rev.bs/wp-content/uploads/2025/10/Cable-Bahamas-Limited-Audited-Financial-Statements-FY-2025.pdf.

that, since 2019 or earlier, it has retransmitted PBS Programming to Cable Bahamas from over-the-air broadcast signals by WPBT.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the Copyright Act, 17 U.S.C. § 101, *et seq*. and the Lanham (Trademark) Act, 15 U.S.C. §§ 1114 and 1125.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and/or a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

16.     This Court has supplemental jurisdiction over Plaintiffs' state-law claims, pursuant to 28 U.S.C. § 1367(a), because those claims are so related to Plaintiffs' claims under federal law that they form the same case or controversy and share a common nucleus of operative facts.

17.     This Court has personal jurisdiction over Cable Bahamas and the Doe Defendants, pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Fla. Stat. § 48.193(1)(a)(2), because (a) each Defendant, either personally or through an agent, committed tortious acts in Florida, and (b) this action arises out of or relates to that tortious conduct.

18.     Cable Bahamas infringed Plaintiffs' copyrights in Florida.  Cable Bahamas, directly or through its agents or co-conspirators, infringed Plaintiffs' copyrights by capturing and demodulating WPBT's broadcast signals in Florida, converting and encoding those broadcast signals into a streamable digital format in Florida, and then retransmitting the resulting digital stream from Florida to locations outside the United States, and eventually to Cable Bahamas' customers.  These and other predicate acts of infringement by Cable Bahamas and its agents and co-conspirators were committed in Florida.

19.     Cable Bahamas committed these acts personally or through the acts of its agents Gulfcom and the Doe Defendants.

20.     Additionally, Cable Bahamas and the Doe Defendants are subject to personal jurisdiction in this Court under Fla. Stat. § 48.193(1)(a)(2) based on their participation in a

-- 5 --

conspiracy to convert PBS Programming.  Upon information and belief, Cable Bahamas, Gulfcom and the Doe Defendants entered into an agreement to engage in unlawful conduct, including Cable Bahamas' infringements of Plaintiffs' copyrights and exclusive license rights.  In furtherance of that conspiracy, at least one co-conspirator committed acts in Florida.

21.     Further, Cable Bahamas, directly or through its agents Gulfcom and the Doe Defendants, has operated, conducted, engaged in, and carried on business in Florida within the meaning of Fla. Stat. § 48.193(1)(a)(1).

22.     Alternatively, this Court has personal jurisdiction over Cable Bahamas pursuant to Fed. R. Civ. P. 4(k)(2) because (a) the claims arise under federal law, (b) Cable Bahamas is not subject to the personal jurisdiction of the courts of general jurisdiction of any one state of the United States, and (c) the exercise of jurisdiction over Cable Bahamas is consistent with the Constitution and laws of the United States.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) and 28 U.S.C. § 1391.  Upon information and belief, at least one Defendant resides or may be found in this District, and a substantial part of the infringing acts and other events giving rise to the claims occurred here.  Additionally, Cable Bahamas, as a foreign company, may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

## FACTUAL BACKGROUND

### A.     Plaintiffs' Public Television Programming

24.     PBS was founded in 1969 to advance education, culture, and civic engagement in the United States.  In furtherance of this mission, PBS acquires and distributes a wide range of non-commercial television and audiovisual programming across educational, cultural, and entertainment topics to PBS member stations.

25.     PBS member stations ("Member Stations") include more than 330 independently owned and operated non-commercial, educational public television stations throughout the United

States and its territories, including GBH in Boston, Massachusetts.  Through its distribution, PBS Programming reaches more than 99% of the United States population.

26.     GBH is a leading non-profit media organization based in Boston, Massachusetts, and is one of the nation's most prolific producers of television content.  GBH develops, produces and distributes award-winning programming in science, history, the arts and public affairs and kids' programming, including acclaimed series such as *Frontline*, *NOVA*, *American Experience*, *Antiques Roadshow*, *Arthur*, *Molly of Denali*, and *Work It Out Wombats!*.  Through its agreements with PBS and other public media entities, GBH delivers high-quality, accessible audiovisual content to millions of viewers nationwide.

27.     Plaintiffs are also the owners or exclusive licensees of award-winning educational programming for children and families.  Notable examples include *Sesame Street*, *Daniel Tiger's Neighborhood*, *Molly of Denali*, and *Wild Kratts*.

28.     Collectively, these programs for adults and children have received dozens of awards and accolades, including Emmy, Critics' Choice, IDA Documentary, and Writers Guild awards for news, documentary, cultural, and artistic programming, as well as Peabody awards recognizing excellence in children's programming.

29.     Plaintiffs are non-profit organizations that acquire, produce, and distribute high-quality educational, cultural, and informational programming.  Plaintiffs also support digital education initiatives, local content development, and outreach programs that serve underserved communities.  Beyond programming, PBS uses its financial resources to enhance technological infrastructure, support Member Station services, and ensure compliance with broadcast standards.

30.     Member Stations—including WPBT, which broadcasts PBS Programming in South Florida—are granted limited, non-transferable rights to broadcast PBS Programming solely within their assigned broadcast territories in the United States.  Those rights do not include the right to sublicense programming to third parties.  And PBS retains all exclusive distribution rights.

31.     PBS may also grant limited digital streaming rights for certain programs.  Such rights are typically subject to geographic restrictions designed to ensure that access is confined to the Member Station's designated local broadcast area.

32.     PBS distribution agreements with Member Stations generally prohibit broadcasts of PBS Programming outside the United States or its designated domestic territories, such as Puerto Rico and the U.S. Virgin Islands.

33.     PBS and GBH between them retain full ownership of or the exclusive licenses for the relevant rights in all the PBS Programming at issue in this action.  On April 23, 2026, PBS executed an assignment whereby PBS assigned to GBH (a) any exclusive rights PBS, as of April 23, 2026, has or may have to distribute via noncommercial linear television rights a set of the PBS Programming that Defendants infringed, and (b) any and all claims and rights assertable under copyright, in law and/or in equity, which claims may have already arisen, may presently exist, or which may arise in the future, including the right to sue for infringement and to recover damages. Accordingly, PBS and GBH each have standing to sue under 17 U.S.C. § 201(d) for infringement of copyrights in each PBS Program distributed by Member Stations.

34.     PBS and GBH regularly register copyrights in programming they produce and distribute.

35.     Attached as Exhibits A, B, and C are true and correct summaries identifying 3,308 television programs that were infringed by Cable Bahamas between April 27, 2023 and August 19, 2025.  Each PBS and PBS Kids Program was originally broadcast by WPBT in Miami, either on its PBS Channel or its PBS Kids Channel.

36.     Cable Bahamas reproduced, distributed, publicly displayed, and publicly performed each PBS and PBS Kids Program identified in Exhibits A, B, and C without authorization from Plaintiffs.  Each PBS Program and PBS Kids Program identified in Exhibits A, B, and C is either (a) registered with the U.S. Copyright Office by PBS or GBH or by a licensor that has granted exclusive rights to PBS or GBH, or (b) a foreign work protected under U.S. copyright law without the need for registration to which PBS or GBH have exclusive rights.

-- 8 --

37.     PBS uses registered trademarks and service marks in connection with its distribution of educational television programming.  PBS has duly and properly registered its trademarks and service marks in the U.S. Patent and Trademark Office, including the "PBS" and "PBS Kids" marks (including Reg. No. 1,247,905 (Sept. 19, 1983); Reg. No. 2,640,582 (Oct. 22, 2002); Reg. No. 2,707,600 (April 15, 2003) and Reg. No. 2,530,112 (Jan. 15, 2002)) and the stylized and composite stylized marks comprising the PBS and PBS Kids logos:

    

(Reg. No. 1,557,252 (Sept. 19, 1989); Reg. No. 2,629,130 (Oct. 1, 2002) and Reg. No. 4,000,808 (July 26, 2011) (collectively, "PBS Marks")).  True and correct copies of the Certificates of Registration evidencing the PBS Marks are attached as Exhibit D.

### B.     Cable Bahamas' Pay-Television Business

38.     Defendant Cable Bahamas was founded in 1995 to provide pay-television service in The Bahamas.  It is The Bahamas' oldest and largest provider of pay-television services.  Cable Bahamas operates 14 free-to-air broadcast systems on 11 islands, eight stand-alone cable television systems, and four triple-play systems (cable television, broadband internet, and fixed and mobile telephone service) networked by a submarine cable.[2]

### 1.     Pay-Television Service

39.     Cable Bahamas provides traditional cable television service in The Bahamas under its REVTV brand.  It offers two tiers of television programming—REVTV Prime (72 channels) and REVTV Pro (99 channels)—as well as multiple "add-on" packages, which offer access to specialized programming for additional fees.[3]

---

[2] Cable Bahamas, *About us*, REV, https://www.rev.bs/about (last visited Feb. 19, 2026).
[3] Cables Bahamas, *REVTV – Entertainment Starts Right Here*, REV, https://www.rev.bs/tv
    (last visited Feb. 19, 2026).

40.     Cable Bahamas also sells pay-television programming to broadband internet customers under its REVTV and ALIVFibr TV brands.  Broadband customers may select from three programming tiers—REVTV Prime (72 channels), ALIVFibr TV Prime (140 channels), and ALIVFibr TV Pro (184 channels)—and can also purchase "add-on" packages.[4]

41.     Cable Bahamas offers pay-television service to fixed and mobile telephone service customers, who can stream live television and recorded programming to mobile devices using the REVGO Play and ALIVFibr TV applications, available through major U.S.-based mobile app stores, including Google Play and Apple's App Store, as well as directly from Cable Bahamas.[5]

42.     In fiscal year 2025, Cable Bahamas reported $242 million in total revenue, including approximately $144 million derived from its cable customers.[6]  Although Cable Bahamas does not break out its pay-television subscriber figures in its public reports, the company has reported that it serves approximately 286,000 customers across all of its services, including pay-television.[7]

### 2.     Replay and Video-on-Demand Services

43.     Cable Bahamas offers a replay feature ("Replay") that allows customers to restart television programs from the beginning regardless of when they tune in.  Cable Bahamas also offers a video-on-demand feature ("VOD") that allows customers to select and view television programming from a stored library.

44.     To operate these features, Cable Bahamas must make and store copies of each program on centralized servers and/or keep them cached on servers for later delivery to customers through a content delivery network on demand.

---

[4] Cables Bahamas, *alivfibr and Rev rates*, REV, https://www.rev.bs/wp-content/uploads/2025/01/aliv-and-rev-rates_01-.pdf (last visited Feb. 19, 2026).

[5] Cable Bahamas, *REVTV Feature REVGO Play*, REV, https://www.rev.bs/tv/revgo-play (last visited Feb. 19, 2026).

[6] *Supra* n.1 at 11 & 57.

[7] Cable Bahamas, *Cable Bahamas Ltd. Reports Robust Q3 FY 2024 Financial Results*, REV (May 21, 2024), available at https://web.archive.org/web/20260123230921/https://www.rev.bs/press-room/cable-bahamas-ltd-reports-robust-q3-fy-2024-financial-results.

45.     Upon information and belief, Cable Bahamas contracts with and uses cloud-based platforms with servers and content delivery networks located in the United States to store, manage, and distribute programming for these services.

### 3.     Cable Bahamas' Signal Delivery Architecture

46.     Cable Bahamas employs a network architecture through which at least some programming it distributes in The Bahamas is first received and processed at facilities in the Southeastern United States, including a facility in South Florida.  The programming Cable Bahamas distributes in The Bahamas—including, upon information and belief, PBS Programming—is delivered to these facilities by satellite or high-speed cable, before being transmitted by submarine cable to Cable Bahamas' headend and distribution facilities in The Bahamas.

47.     Cable Bahamas, through a wholly owned subsidiary, owns and operates the submarine fiber-optic cable system connecting The Bahamas to the United States.

48.     That submarine cable connects directly to landing points and network facilities in Florida, pursuant to licenses issued by the Federal Communications Commission,[8] and it is part of the overall cable infrastructure Cable Bahamas uses to deliver television programming to its cable, broadband, and mobile customers in The Bahamas.

49.     Cable Bahamas' submarine fiber-optic network is designed to support high-speed, high-capacity commercial transmissions of television programming, and other audiovisual content.  Such infrastructure can transmit large-volume data streams from the United States and supply television programming of the type distributed by Cable Bahamas, including programming delivered using the Replay and VOD features.

50.     Through this submarine cable infrastructure, and via South Florida, Cable Bahamas regularly transmits digital streams that include television programming between the U.S.-based

---

[8] FCC License SCL-LIC-20000118-00001, available at https://fcc.report/IBFS/SCL-LIC-20000118-00001 (last visited Apr. 9, 2026) & FCC License SCL-AMD-20000405-00011, available at https://fcc.report/IBFS/SCL-AMD-20000405-00011 (last visited Apr. 9, 2026).

facilities at which the programming is initially received and processed, and The Bahamas, including, upon information and belief, PBS Programming.

51.     Thus, in sum, Cable Bahamas receives programming originating in Florida, and uses its Florida-based submarine fiber-optic cable infrastructure to retransmit, distribute, and sell television programming in The Bahamas.

### CABLE BAHAMAS' INFRINGEMENTS OF COPYRIGHTS

52.     From 2019 or earlier until at least August 19, 2025, Cable Bahamas infringed copyrights owned by or exclusively licensed to Plaintiffs, including the copyrights in PBS Programming.

53.     During this period, without authorization, Cable Bahamas distributed to its customers PBS Programming that originated from WPBT in Miami.  Plaintiffs did not license any PBS Programming to Cable Bahamas.  And WPBT did not have the right to, and did not, license any of PBS Programming to Cable Bahamas.  Those PBS and PBS Kids Programs were illegally captured, reproduced, demodulated, converted, encoded, and retransmitted from Florida to The Bahamas—possibly via Canada, as described below.

54.     Cable Bahamas has made conflicting representations regarding how it initially obtained PBS Programming from WPBT's broadcast signals in Florida.

55.     Cable Bahamas represented to the public in June 2019 that it received the feed for its PBS channel, which played PBS Programming, from "an overseas provider," who purportedly operated a "fibre" delivery system to deliver programming.[9]  Upon information and belief, Cable Bahamas had no other way to receive these feeds by fiber-optic cable other than through the submarine cable operated by its wholly owned subsidiary and running through South Florida, as detailed above.

---

[9] Cable Bahamas, *REV Service Advisory for Family Islands*, REV (June 1, 2019), , available at https://web.archive.org/web/20260124000219/https://www.rev.bs/press-room/rev-service-advisory-exuma.

56. Later, in fall 2019, Cable Bahamas represented that it obtained PBS Programming itself, over the air. On or about November 19, 2019, the regulatory authority in The Bahamas responsible for regulating telecommunication companies fined Cable Bahamas for failing to timely notify its customers of changes to its channel offerings. Among the changes identified by the regulator was Cable Bahamas' new offering of a "PBS Kids" channel.[10] In opposing that fine, Cable Bahamas represented to the regulator that it obtained PBS Programming for its "PBS Kids" channel by intercepting broadcast signals "from the United States," and that it did so in The Bahamas.[11]

57. Cable Bahamas' representation to its regulators contained two distinct factual assertions: that it obtained PBS Programming over the air, and that it did so in The Bahamas. The first assertion may be true. But the second assertion—that any over-the-air receipt of PBS Programming first occurred in The Bahamas rather than in Florida—is false. It would not be commercially feasible to capture and retransmit WPBT's over-the-air broadcasts of PBS Programming outside of Florida, given how WPBT's broadcast antenna in Florida operates.

58. WPBT's broadcast tower is located in Andover, Florida, approximately 10 miles to the west of the Atlantic coast. The station transmits using a directional antenna pattern that emphasizes signal coverage to the north, west, and south—targeting communities across South Florida—while limiting signal propagation east over the Atlantic Ocean. With this directional pattern, it is not technically feasible to maintain commercially reliable reception of WPBT's signal in Nassau, where Cable Bahamas' primary infrastructure is located. As a result, if Cable Bahamas obtained PBS Programming by over-the-air reception, it must have done so in Florida.[12]

59. The next representation Cable Bahamas made regarding how it obtained PBS Programming was made in response to Plaintiffs' June 26, 2025 cease-and-desist demand. Cable

---

[10] Utilities Regulation & Competition Authority, *In re: Breaches of the Retail Pricing Rules and Other Measures*, at 3 (Nov. 21, 2019) https://www.urcabahamas.bs/wp-content/uploads/2019/12/Final-Determination-and-Order-CBL-21-November-2019_Redacted.pdf.

[11] *Id.*, at 10.

[12] WPBT's broadcasts are also carried by cable and satellite companies operating in South Florida. Any retransmission of that programming is strictly prohibited by contract and federal law. *See* 47 U.S.C. § 553(a)(1) and 47 U.S.C. § 605(a).

Bahamas responded that it received PBS Programming from Gulfcom.  Gulfcom then represented to Plaintiffs that it received WPBT's over-the-air broadcast signals and retransmitted those signals to Cable Bahamas via satellite from a facility in Canada.

60.     Regardless of which of these representations—if any—is truthful, Cable Bahamas, and/or Gulfcom or the Doe Defendants acting as Cable Bahamas' agents or co-conspirators, first obtained PBS Programming in Florida.

61.     In order to capture WPBT's signals, and to demodulate and convert them into a streamable format, Defendants required physical equipment and an outside plant, including high-speed cable networks and nodes, located in Florida and operated by Cable Bahamas, Gulfcom and/or the Doe Defendants.  And the only way to transport WPBT's converted signals required cable networks connecting Florida to Canada and/or The Bahamas.

62.     After PBS Programming was obtained in South Florida, and demodulated, converted, and encoded into a digital format suitable for transmission outside of the United States, Cable Bahamas then retransmitted, distributed, and sold PBS Programming in The Bahamas until at least August 19, 2025. *See infra* ¶¶ 64-82.  Indeed, Cable Bahamas reproduced, distributed, and publicly displayed, and publicly performed PBS Programming as it aired on WPBT in Florida, without a license or other authorization from PBS and GBH, in clear violation of U.S. copyright law.

63.     By capturing WPBT's broadcast signals in Florida, demodulating and converting those signals into a digital format in Florida, and transmitting the resulting feed from Florida to Cable Bahamas' customers in The Bahamas, Cable Bahamas reproduced, distributed, publicly displayed, and publicly performed Plaintiffs' registered works without authorization by Plaintiffs and in violation of U.S. copyright law.

**PLAINTIFFS' INVESTIGATION**

64.     Plaintiffs PBS and GBH investigated Cable Bahamas' conduct.  That investigation conclusively established that Cable Bahamas reproduced, distributed, publicly displayed, and

publicly performed PBS Programming that originated from broadcast signals transmitted by WPBT in Miami, without a license or other authorization from Plaintiffs.

65.     Plaintiffs obtained direct evidence of Cable Bahamas' infringement, including recordings of 535 PBS and PBS Kids Programs that Cable Bahamas unlawfully distributed, reproduced, publicly displayed, and publicly performed between April 1 and April 30, 2025, through its REVTV pay-television service.  *See* Exhibit A.

66.     Each PBS and PBS Kids Program was recorded in Grand Bahama, The Bahamas, on REVTV Channel 213 (PBS) or REVTV Channel 305 (PBS Kids).

67.     Each recorded PBS and PBS Kids Program in The Bahamas identified WPBT as the original source of the programming.  For example, each program displayed WPBT's "South Florida PBS" logo, the WPBT call letters, and station identifier (right red arrow).  A true and correct screenshot as it appeared on April 1, 2025 is reproduced below.  The time, date, and program information were inserted by Cable Bahamas as part of an onscreen display (left red arrow) that Cable Bahamas superimposed on PBS Programming.



68.     Cable Bahamas' onscreen display also included an unauthorized reproduction (left red arrow) of the stylized composite mark for the PBS logo owned by PBS.  *See* Exhibit D (Reg. No. 1,557,252 and Reg. No. 2,629,130).

69.     Plaintiffs recorded all 535 PBS and PBS Kids Programs, in whole or in part, on a cable television account purchased from Cable Bahamas.

70.     A true and correct copy of a Cable Bahamas invoice showing the account used to record PBS and PBS Kids Programs in Grand Bahama is reproduced below.[13]



71.     Cable Bahamas transmitted PBS and PBS Kids Programs to the account using a set-top box ("STB") supplied by Cable Bahamas and installed at the subscriber's address in Grand Bahama.  A true and correct photograph of the Cable Bahamas STB is reproduced below.[14]



72.     Until at least August 19, 2025, Cable Bahamas advertised PBS and PBS Kids channels on its website.  Channel listings published on Cable Bahamas' website listed PBS Programming on Channel 213, titled "PBS," and Channel 305, titled "PBS Kids."  Both channels were listed on every tier of programming offered by Cable Bahamas and were therefore available to all customers.  True and correct screenshots of Cable Bahamas' channel listings, as they appeared on May 21, 2025, are reproduced below.

---

[13] Personally identifiable information has been redacted.
[14] An infrared repeater connected to the STB has been blacked out.



73.     The channel listings published by Cable Bahamas included unauthorized reproductions of the PBS Marks, including the stylized composite marks for the PBS and PBS Kids logos owned by PBS.  *See* Exhibit D (Reg. No. 1,557,252, Reg. No. 2,629,130, and Reg. No. 4,000,808).

74.     The Cable Bahamas website, which is owned and operated by Cable Bahamas, is accessible in Florida and is used to advertise, promote, and solicit subscriptions for Cable Bahamas' pay-television services to current and prospective customers, including those located in the United States.

75.     PBS and GBH never granted a license to Cable Bahamas, and its unauthorized reproduction, distribution, public display, and public performance of PBS Programming violate U.S. copyright law.

76.     Similarly, PBS never granted permission to Cable Bahamas to use the PBS Marks, and its unauthorized use of those marks violates U.S. trademark law.

### JUNE 26, 2025 CEASE-AND-DESIST DEMAND

77.     On June 26, 2025, Plaintiffs served Cable Bahamas with a written cease-and-desist notice, informing the company that it lacked any license or authorization from PBS and GBH to retransmit, distribute, and sell PBS Programming.  That notice further instructed Cable Bahamas

-- 17 --

to "immediately cease all use of PBS Programming and marks associated with PBS Programming."

78. The next day, Cable Bahamas' President and Chief Executive Officer Franklyn Butler acknowledged that the company received the notice.

79. Cable Bahamas never produced a license or other authorization from PBS or GBH to retransmit, distribute, and sell PBS Programming.

80. Between June 26, 2025 and August 19, 2025, Plaintiffs repeatedly warned Cable Bahamas and its counsel, orally and in writing, that Cable Bahamas was continuing to infringe hundreds of PBS and PBS Kids Programs, and that Cable Bahamas' ongoing infringement was knowing and willful.

81. Notwithstanding receipt of the June 26, 2025 cease-and-desist demand, its inability to produce any license or other authorization to distribute PBS Programming, and repeated infringement warnings from PBS and GBH, Cable Bahamas continued to retransmit, distribute, and sell PBS Programming until at least August 19, 2025.

82. Between June 26, 2025 and August 19, 2025, Cable Bahamas reproduced, distributed, publicly displayed, and publicly performed at least 683 PBS and PBS Kids Programs without authorization and in willful violation of U.S. copyright law. A true and correct summary of that PBS Programming is set forth in Exhibit C.

## CABLE BAHAMAS' INFRINGEMENTS WERE WILLFUL

83. Cable Bahamas' infringements of Plaintiffs' copyrights were knowing and willful.

84. Cable Bahamas is a sophisticated commercial pay-television operator that routinely acquires, packages, and sells television programming to subscribers for profit. Yet, Cable Bahamas retransmitted, distributed, and sold PBS Programming knowing that such conduct required a license from the Plaintiffs, and knowing that it lacked such a license.

85. At all relevant times, Cable Bahamas knew that PBS Programming was protected by U.S. copyright law and that any retransmission, distribution, and sale of such programming

required a valid license.  Cable Bahamas knew it had no license or other authorization from PBS or GBH, and when Plaintiffs demanded that Cable Bahamas produce a license or other authorization, it was unable to do so.

86.     Nevertheless, until at least August 19, 2025, Cable Bahamas intentionally engaged in a scheme to illegally capture, reproduce, demodulate, convert, encode, transmit, distribute, and monetize PBS Programming.  Cable Bahamas acquired PBS Programming that it knew was infringing and integrated PBS Programming into its channel lineups, Replay and VOD services, and commercial offerings, using PBS Programming to attract subscribers and generate revenue.

87.     Cable Bahamas' continued infringement, even after explicit notice, was a calculated business decision that conferred significant financial and operational advantages.  By relying on unlawfully acquired PBS Programming, Cable Bahamas avoided the costs of obtaining a license from Plaintiffs, evaded geographic and contractual restrictions imposed on legitimate licensees, and gained a financial advantage over its competitors, thereby thwarting Plaintiffs' licensing efforts.

88.     Cable Bahamas' infringement was not isolated or episodic.  The scale, duration, repetition, and persistence of Cable Bahamas' infringements (as shown by the evidence assembled by Plaintiffs) confirms its willfulness:

(a)     In a single month (April 2025), Plaintiffs recorded 535 PBS and PBS Kids Programs in The Bahamas.[15]

(b)     Broadcast logs show that WPBT aired at least 2,090 PBS and PBS Kids Programs between April 27, 2023 and June 25, 2025, each of which, upon information and belief, Cable Bahamas retransmitted, distributed, and sold to its cable, broadband, and mobile customers without authorization.[16]

(c)     Even after receiving the June 26, 2025 cease-and-desist letter, upon information and belief, Cable Bahamas retransmitted, distributed, and sold at least 683 PBS

---

[15] A true and correct summary of these recordings is attached as Exhibit A.
[16] A true and correct summary of these broadcasts is attached as Exhibit B.

and PBS Kids Programs aired by WPBT to its cable, broadband, and mobile customers without authorization until August 19, 2025.[17]

89.     By those actions, Cable Bahamas has engaged in copyright infringement, in violation of 17 U.S.C. § 501(a).

90.     Cable Bahamas' infringements of copyrights owned by or exclusively licensed to Plaintiffs—committed directly or through the acts of its agents and co-conspirators, Gulfcom and the Doe Defendants—include

    (a)     capturing, reproducing, demodulating, converting, and encoding PBS Programming in Florida, where it was broadcast by WPBT;

    (b)     retransmitting PBS Programming from Florida to locations outside the United States, including Cable Bahamas' headend and other facilities in The Bahamas; and

    (c)     distributing, publicly displaying, and publicly performing PBS Programming to the Cable Bahamas' cable, broadband, and mobile customers.

91.     The foreseeable consequences of Cable Bahamas' unlawful conduct include depriving Plaintiffs of exclusive licensing opportunities in The Bahamas; interfering with Plaintiffs' contractual relationships and geographic distribution restrictions; and damaging the value, goodwill, and reach of the PBS brand.  Accordingly, Plaintiffs are entitled to compensatory damages for Cable Bahamas' infringements in accordance with 17 U.S.C. § 504(b).

92.     By obtaining and exploiting PBS Programming without securing a license from or paying compensation to Plaintiffs, Cable Bahamas has profited from its infringements of Plaintiffs' copyrights and exclusive license rights.  Accordingly, Plaintiffs are entitled to an order requiring Cable Bahamas to provide an accounting of all gross revenues and profits and, further, to disgorge all profits it earned from its infringements in accordance with 17 U.S.C. § 504(b).

93.     Cable Bahamas' infringements were willful, undertaken in bad faith, and executed with full knowledge of Plaintiffs' copyrights and exclusive license rights, and in conscious

---

[17] A true and correct summary of these broadcasts is attached as Exhibit C.

disregard of those rights.  Accordingly, Plaintiffs are entitled to heightened statutory damages for Cable Bahamas' willful infringements in accordance with 17 U.S.C. § 504(c)(2).

94.    Cable Bahamas' deliberate infringements of Plaintiffs' copyrights and exclusive license rights have caused, and will continue to cause, irreparable harm to Plaintiffs, unless enjoined by this Court.  In the absence of injunctive relief, Plaintiffs will have no adequate remedy at law.  Accordingly, Plaintiffs are entitled to temporary and permanent injunctive relief in accordance with 17 U.S.C. § 502.

95.    Plaintiffs acted with reasonable diligence to protect their copyrights, and had no actual or constructive knowledge of Cable Bahamas' infringing conduct until Plaintiffs' discovery of the same, which was well within three years of filing this Complaint. *See supra* ¶¶ 64-76.  Since 2019 or earlier, Cable Bahamas has actively concealed its infringements from Plaintiffs.  That concealment included Cable Bahamas' false and misleading statements to the Utilities Regulation & Competition Authority of The Bahamas regarding the source of PBS Programming, its purposefully vague description of Gulfcom and/or the Doe Defendants as "overseas provider" of PBS Programming, and Gulfcom's and the Doe Defendants' surreptitious role in assisting Cable Bahamas' reception and retransmission of WPBT's broadcasts. *See supra* ¶¶ 52-61.  Accordingly, the limitations period governing Plaintiffs' claims should be tolled until the date Plaintiffs first learned, or reasonably could have learned, of Cable Bahamas' unlawful acts.

## COUNT ONE

### Copyright Infringement in Violation of 17 U.S.C. § 501
### (All Defendants)

96.    Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 95 as if fully set forth herein.

97.    Plaintiffs own valid copyrights in, are exclusive licensees of, and/or have been assigned the requisite rights to pursue copyright infringement claims for each work identified in Exhibits A, B, and C.

98. Each work identified in Exhibits A, B, and C is (a) registered with the Copyright Office by Plaintiffs or by a licensor that has granted exclusive rights to Plaintiffs, or (b) a foreign work protected under U.S. copyright law without the need for registration.

99. Each Plaintiff is either (a) the owner of all relevant rights and interests, including those necessary to pursue already-accrued claims, in the copyrights for each work comprising the PBS Programing identified in Exhibits A, B, and C; or (b) was the exclusive licensee of such copyrights at the time of the infringement.

100. Each work comprising PBS Programming is an original work that is copyrightable subject matter under U.S. copyright law.

101. At no time has either Plaintiff authorized Defendants or Gulfcom to reproduce, distribute, prepare derivative works, publicly display, or publicly perform the works comprising PBS Programming or any portion thereof.

102. Defendants have infringed Plaintiffs' copyrights and exclusive license rights in the works comprising PBS Programming, including by reproducing, distributing, publicly displaying, and publicly performing PBS Programming without permission in violation of the Copyright Act, 17 U.S.C. § 106.

103. Defendants' infringements were willful because Defendants knew they lacked any license or authorization to reproduce, distribute, publicly display, or publicly perform PBS Programming, and acted in conscious disregard of Plaintiffs' rights in their protected works.

104. By reason of Defendants' infringements, Plaintiffs have sustained and will continue to sustain substantial injury, loss, and damage to their rights in the registered works and rights exclusively licensed to them comprising PBS Programming.

105. Because Plaintiffs are without an adequate remedy at law, Plaintiffs are entitled to an injunction, in accordance with 17 U.S.C. § 502, restraining Defendants, their officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Defendants, from engaging in further acts of copyright infringement.

106.    Plaintiffs are further entitled to recover from Defendants all gains, profits, and advantages Defendants have obtained as a result of Defendants' infringements of copyrights owned by or exclusively licensed to Plaintiffs.

107.    At their election, Plaintiffs are entitled to recover statutory damages in accordance with 17 U.S.C. § 504.

108.    Plaintiffs are also entitled to recover costs and attorneys' fees in accordance with 17 U.S.C. § 505.

109.    Plaintiffs are informed and believe, and on that basis allege, that unless enjoined by this Court, Defendants will continue their course of conduct and will continue to wrongfully reproduce, use, infringe upon, sell, and otherwise profit from copyrights in works owned by or exclusively licensed to Plaintiffs.

### **COUNT TWO**

**Trademark Infringement in Violation of 15 U.S.C. § 1114**
**(Cable Bahamas)**

110.    Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 95 as if fully set forth herein.

111.    PBS is the true and rightful owner of trademarks and service marks registered with the Patent and Trademark Office, including Reg. No. 1,247,905; Reg. No. 2,640,582; Reg. No. 2,707,600; and Reg. No. 2,530,112 (word marks for "PBS" and "PBS Kids") and Reg. No. 1,557,252; Reg. No. 2,629,130; and Reg. No. 4,000,808 (stylized composite marks for PBS and PBS Kids logos).  True and correct copies of the Certificates of Registration evidencing the PBS Marks are attached at Exhibit D.

112.    The PBS Marks are arbitrary and fanciful, and therefore inherently distinctive. Through PBS's longstanding reputation for integrity, its consistent delivery of high-quality programming, and its substantial investment of time, effort and resources in promoting and protecting the PBS Marks, these marks have developed significant goodwill in the United States and internationally.  As a result, the relevant consuming public recognizes the PBS Marks as

indicators of products and services of superior quality that originate from, or are affiliated with, PBS.

113. Cable Bahamas used in U.S. commerce the PBS Marks without authorization, including by (a) displaying the marks on its website that is accessible in Florida to advertise and promote its services and channels, and (b) superimposing the PBS logo in on-screen displays.

114. Cable Bahamas' unauthorized reproduction, display and use of the PBS Marks was and is willful, done with full knowledge of PBS's registered trademarks and service marks, and in conscious disregard of PBS's rights in its protected marks, and constitutes willful and deliberate infringement, in violation of Section 32 of the Lanham (Trademark) Act, 15 U.S.C. § 1114.

115. Cable Bahamas' unauthorized reproduction, display and use of the PBS Marks have caused and will continue to cause the public to be confused, mistaken, and deceived about the source, origin, and authenticity of television programming offered, marketed, and sold by Cable Bahamas.

116. Further, Cable Bahamas' unauthorized reproduction, display, and use of the PBS Marks have caused and will continue to cause the public to conclude, incorrectly, that television programming offered, marketed, or sold by Cable Bahamas was and is authorized or approved by PBS.

117. Cable Bahamas' violations have injured PBS, including, by way of example, causing damage to PBS's business reputation and goodwill as a source of non-commercial television programming, and interfering with PBS's contracts, including its contracts for the creation, distribution, and licensing of educational programming.

118. PBS is entitled to recover damages, which include its losses, and all profits Cable Bahamas has made as a result of its wrongful conduct. Additionally, because Cable Bahamas has willfully used the PBS Marks in a manner calculated to cause consumer confusion, the award of damages and profits should be trebled pursuant to 15 U.S.C. § 1117(b). Alternatively, PBS is entitled to recover statutory damages, and that award should be enhanced pursuant to 15 U.S.C. § 1117(c).

119.    PBS is entitled to temporary, preliminary, and permanent injunctive relief, pursuant to 15 U.S.C. § 1116(a), because Cable Bahamas' acts have damaged and will continue to damage PBS irreparably for which it has no adequate remedy at law.

## COUNT THREE

### False Designation of Origin in Violation of 15 U.S.C. § 1125(a)
### (Cable Bahamas)

120.    Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 95 as if fully set forth herein.

121.    Cable Bahamas used in U.S. commerce the PBS Marks without authorization, including by (a) displaying the marks on its website that is accessible in Florida to advertise and promote its services and channels, and (b) superimposing the PBS logo in on-screen displays.

122.    Cable Bahamas' unauthorized reproduction, display, and use of the PBS Marks is a false designation of origin, or a false description or representation that wrongfully implies television programming originated directly from PBS and with PBS's authorization or consent, and constitutes the utilization of false descriptions or representations in interstate or foreign commerce.

123.    Cable Bahamas' unauthorized reproduction, display, and use of the PBS Marks is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Cable Bahamas with PBS, or as to the origin, sponsorship, or approval by PBS, in violation of Section 43(a) of the Lanham (Trademark) Act, 15 U.S.C. § 1125(a).

124.    Cable Bahamas' violations have injured PBS, including, by way of example, causing damage to PBS's business reputation and goodwill as a source of non-commercial television programming, and interfering with PBS's contracts, including its contracts for the creation, distribution, and licensing of educational programming.

125.    PBS is entitled to recover damages, which include its losses, and all profits Cable Bahamas has made as a result of its wrongful conduct, pursuant to 15 U.S.C. § 1117(a).

126.    PBS is entitled to temporary, preliminary, and permanent injunctive relief, pursuant to 15 U.S.C. § 1116(a), because Cable Bahamas' acts have damaged and will continue to damage PBS irreparably for which it has no adequate remedy at law.

### COUNT FOUR

**Violation of FDUTPA – Fla. Stat. § 501.201, *et seq.***
**(All Defendants)**

127.    Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 95 as if fully set forth herein.

128.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce within the state of Florida.

129.    At all relevant times, Defendants engaged in trade or commerce as defined in Fla. Stat. § 501.203(8), by intercepting, copying, demodulating, converting, encoding, and retransmitting broadcast signals by WPBT, including but not limited to the audiovisual works listed in Exhibits A, B, and C, and by advertising, soliciting, providing, offering, and distributing those audiovisual works, including through https://www.rev.bs in Florida and elsewhere.

130.    Defendants engaged in unfair and deceptive acts or practices as described herein, including by intercepting, copying, demodulating, converting, encoding, and retransmitting broadcast signals by WPBT, including but not limited to the audiovisual works listed in Exhibits A, B, and C, under the false pretense that those broadcasts (a) would be viewed and displayed in Florida, (b) would be used for non-commercial purposes, and (c) would not be retransmitted to and sold in a foreign jurisdiction.

131.    Defendants further engaged in unfair and deceptive acts or practices by claiming falsely to consumers, including consumers in Florida, that Defendants were authorized to retransmit and sell broadcast signals by WPBT, including but not limited to the audiovisual works listed in Exhibits A, B, and C.

132.  Defendants' conduct was likely to deceive a reasonable consumer and constitutes an unfair or deceptive act or practice in violation of FDUTPA.

133.  Defendants' actions described herein constitute unfair or deceptive trade practices substantially affecting trade or commerce in the state of Florida in violation of FDUTPA, and both Plaintiffs and consumers have been aggrieved by them.

134.  As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer actual damages, including lost business, loss of goodwill, and reputational harm.  That harm includes but is not limited to diversion of customers in foreign markets, harm to Plaintiffs' goodwill and reputation as a source of non-commercial television programming, and interference with Plaintiffs' contracts, including their contracts for the creation, distribution, and licensing of educational programming.

135.  Plaintiffs are entitled to a judgment awarding compensatory damages pursuant to Fla. Stat. § 501.211(2), an order enjoining Defendants' violations pursuant to Fla. Stat. § 501.211(1), and an award of Plaintiffs' reasonable attorneys' fees and costs pursuant to Fla. Stat. § 501.2105.

## COUNT FIVE

### Civil Conspiracy to Commit Conversion
### (All Defendants)

136.  Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 through 95 as if fully set forth herein.

137.  Cable Bahamas, Gulfcom, and the Doe Defendants knowingly entered into an agreement and acted in concert to intentionally and unlawfully convert Plaintiffs' property—namely, Plaintiffs' PBS Programming and the exclusive rights of ownership and control associated with that programming—for their own use and for the commercial benefit of Cable Bahamas.

138.  In furtherance of that agreement, Defendants coordinated the capture, reproduction, demodulation, conversion, encoding, retransmission, and commercial sale of WPBT broadcast signals and the audiovisual works embodied therein, including but not limited to the works

-- 27 --

identified in Exhibits A, B, and C.  These acts constituted overt acts in furtherance of the conspiracy and were undertaken pursuant to an agreement to appropriate Plaintiffs' property without authorization or compensation.

139.    Through these coordinated acts, Defendants exercised wrongful dominion and control over Plaintiffs' property by taking PBS Programming, converting it into Defendants' own digital feeds, integrating it into Cable Bahamas' channel offerings, and selling it to subscribers— thereby excluding Plaintiffs from possession, control, licensing, and lawful exploitation of their property.

140.    Defendants acted with actual malice and/or reckless disregard of Plaintiffs' rights.

141.    As a direct and proximate result of Defendants' wrongful acts and conspiracy to commit conversion, Plaintiffs have suffered and continue to suffer damages, including the loss of control over their property, lost licensing revenue, unjust enrichment to Defendants, and other consequential damages.

142.    Plaintiffs are entitled to judgment awarding compensatory damages resulting from Defendants' wrongful conspiracy to convert Plaintiffs' property, compelling Defendants to account for and disgorge all gains, profits, and advantages obtained as a result of their wrongful conversion of Plaintiffs' property, and enjoining Defendants from further conversion of Plaintiffs' property.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs Public Broadcasting Service and WGBH Educational Foundation respectfully request that this Court grant the following relief:

A.      Judgment in Plaintiffs' favor and against Defendants on all Counts alleged herein;

B.      For a temporary, preliminary, and permanent injunction enjoining and restraining Defendants, and all persons or entities acting in concert with Defendants, from reproducing, distributing, creating derivative works, displaying, performing, advertising, promoting, offering

for sale, and/or selling any PBS Programming or other works that are protected by copyrights owned by or exclusively licensed to Plaintiffs;

C. For a temporary, preliminary, and permanent injunction enjoining and restraining Cable Bahamas, and all persons or entities acting in concert with Cable Bahamas, from imitating, reproducing, or making any other infringing uses of any PBS Marks or other trademarks or service marks owned by or exclusively licensed to PBS;

D. For a temporary, preliminary, and permanent injunction enjoining and restraining Cable Bahamas, and all persons or entities acting in concert with Cable Bahamas, from making any false claims of association or affiliation with PBS;

E. For an order requiring Defendants to deliver to Plaintiffs or this Court any copies of PBS Programming in their possession or control, and for the remedial destruction of such copies;

F. For an award of (1) actual damages suffered by Plaintiffs and any profits made by Defendants that are attributable to their violations of 17 U.S.C. § 501, or (2) statutory damages of up to $150,000 for each copyright infringed by Defendants, at Plaintiffs' election;

G. For an award of (1) treble the amount of actual damages suffered by Plaintiff PBS and any profits made by Cable Bahamas that are attributable to its violations of 15 U.S.C. §§ 1114 and 1125, or (2) statutory damages of up to $2,000,000 for each counterfeit trademark or service mark, at PBS's election;

H. For an award of actual damages suffered by Plaintiffs, in accordance with Fla. Stat. § 501.211(2);

I. For an award of compensatory, exemplary, and/or punitive damages, in accordance with Florida law;

J. For an award of reasonable attorneys' fees and costs under 17 U.S.C. § 505, 15 U.S.C. § 1117, and Fla. Stat. § 501.2105;

K. For an award of pre- and post-judgment interest; and

L. For such other and further relief as the Court may deem to be just and proper.

Dated:  April 27, 2026.

Respectfully submitted,


By:  /s/ Jeffrey Marcus
Jeffrey Marcus (FL Bar No. 310890)
Michael Pineiro (FL Bar No. 41897)
**MARCUS RASHBAUM PINEIRO & MEYERS LLP**
2 South Biscayne Boulevard, Ste 2530
Miami, Florida 33131
(305) 400-4262
jmarcus@mrpfirm.com
mpineiro@mrpfirm.com

Scott T. Wilsdon (*pro hac vice* pending)
Jason Markham (*pro hac vice* pending)
**BROADCAST COUNSEL PLLC**
99 Wall Street, Suite 1770
New York, NY  10005
(917) 300-9259
wilsdon@broadcastcounsel.com
markham@broadcastcounsel.com

Sean Hecker (*pro hac vice* pending)
Julie Fink (*pro hac vice* pending)
Damaris Hernández (*pro hac vice* pending)
Derek Wikstrom (*pro hac vice* pending)
**HECKER FINK LLP**
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jfink@heckerfink.com
dhernandez@heckerfink.com
dwikstrom@heckerfink.com

*Attorneys for Plaintiffs Public Broadcasting*
*Service and WGBH Educational Foundation*

## DEMAND FOR JURY TRIAL

Plaintiffs Public Broadcasting Service and WGBH Educational Foundation demand trial by jury for all claims for relief or issues in this action that are triable as a matter of right to a jury.

Dated:  April 27, 2026.                    Respectfully submitted,


By: /s/ Jeffrey Marcus

Jeffrey Marcus (FL Bar No. 310890)
Michael Pineiro (FL Bar No. 41897)
**MARCUS RASHBAUM PINEIRO & MEYERS LLP**
2 South Biscayne Boulevard, Ste 2530
Miami, Florida 33131
(305) 400-4262
jmarcus@mrpfirm.com
mpineiro@mrpfirm.com

Scott T. Wilsdon (*pro hac vice* pending)
Jason Markham (*pro hac vice* pending)
**BROADCAST COUNSEL PLLC**
99 Wall Street, Suite 1770
New York, NY  10005
(917) 300-9259
wilsdon@broadcastcounsel.com
markham@broadcastcounsel.com

Sean Hecker (*pro hac vice* pending)
Julie Fink (*pro hac vice* pending)
Damaris Hernández (*pro hac vice* pending)
Derek Wikstrom (*pro hac vice* pending)
**HECKER FINK LLP**
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
shecker@heckerfink.com
jfink@heckerfink.com
dhernandez@heckerfink.com
dwikstrom@heckerfink.com

***Attorneys for Plaintiffs Public Broadcasting Service and WGBH Educational Foundation***